Wanamaker, J.
Plaintiff in error was indicted by the grand jury of Tuscarawas, cduiity for obtaining money from one Alice M. Ohliger by false pretenses.
*369 The indictment was in the usual form, save and except the'false pretenses pleaded and also certain uses to which the money was to be applied. That portion of the indictment relating to the false pretenses charged is in substance as follows: That said Edward W. Tingue, on the 17th day of May, 1910, in the county of Tuscarawas, with the intent unlawfully and feloniously to defraud one Alice M. Ohliger, did then and there unlawfully, feloniously and knowingly falsely pretend to her, the said Alice M. Ohliger, that he, the said Edward W. Tingue, was then' aiid there the owner of a large estate in the state of New York, worth $20,000, from which he received a large annual income; that he, the said Édward W. Tingue, was then and there the owner of other valuable property in the state of New York of the value of $17,000; that he, the said Edward W. Tingue, was then' and there the owner of valuable railroad stock in The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company; that he, tlie. said Edward W. Tingue, was then and there 'the owner of valuable stock in a woolen mill in the Dominion of Canada, which said woolen mill would be oí the value of $1,000,000 when completed, and that he, the said Edward W. Tingue, then and there had the right to sell and dispose of stock of the aforesaid woolen mill; that, by which said false pretenses, then and there made as aforesaid, said Alice M. Ohliger, then and there believing said false pretenses to be true, and relying and acting upon that belief, was induced, then and there to and did pay to the said Edward W. Tingue the sum of $1,500 in money of the personal property of the *370 said Alice M. Ohliger to be by him, the said Edward W. 'Tingue, invested in said woolen mill stock in the name of her, the said Alice M. Ohliger.
It is admitted that the indictment negatived the truth of said false pretenses and also charged that' said Tingue well knew the said false pretenses to be false at the time of making the same.
A general demurrer was filed to the indictment, which was overruled and the defendant below excepted. A plea of riot guilty was then entered and the case proceeded to trial to a jury, resulting in a verdict of guilty. A motion for a new trial, containing some fourteen grounds, was then interposed by the defendant, which motion was by the court overruled, exceptions taken and sentence imposed. Thereupon the case proceeded on error to the court of appeals, which affirmed the judgment below, and to that judgment of affirmance error was prosecuted to this court to reverse the judgment below.
The first question to be determined is, Does the indictmerit charge the offense of “obtaining money by false pretenses?”
It is elementary that the elements of the offense aré provided by the statute.
Section 13104, General Code, reads as follows: “Whoever, by false pretense and with intent to defraud, obtains anything of value or procures the signature of another as maker; indorser or guarantor to a bond, bill, receipt, promissory note, draft, check or other evidence of indebtedness or whoever sells, barters or disposes of a bond, bill, receipt, promissory note,' draft or check or offers so to do, *371 knowing the signature of the maker, indorser or guarantor thereof, to haye been obtained by false pretense, if the value of the property or instrument so procured, sold, bartered or disposed of, or offered to he sold, bartered or disposed of, is thirty-five dollars or more, shall be imprisoned in the penitentiary not less than one year nor more than three years, .or, if less than that sum, shall be fined not less than ten dollars nor more than one hundred dollars or imprisoned not less than ten days nor more than sixty days, or .both.”
An examination of the indictment in connection with the statute clearly discloses that every essential element o.f the offense, both as provided by the statute and numerous decisions thereunder by this court, have been adequately pleaded, and that the demurrer, therefore, was rightly overruled.
Upon the trial the whole transaction between the parties was fully disclosed, both by .the prosecuting witness and the other witnesses to the transaction. Upon the evidence the defendant moved for a directed verdict in his favor upon the ground of variance between pleading and- proof. That variance he predicates, first, upon the word “obtains.” He claims that the evidence clearly shows that the prosecuting witness made the defendant her agent to receive the custody of $1,500 of her money to be invested by him in her name, and that, therefore, he did not acquire title or ownership over said $1,500. However, in order to commit the crime of obtaining money under false pretenses, it is not necessary to acquire title or ownership. One may acquire a mere loan of money by such false pre *372 tenses and commit an offense pursuant to the statute; Indeed, it would' be a most dangerous doctrine to permit men by falsely and fraudulently representing their financial standing, to secure a loan or credit and then hold that no crime had been committed by- false and fraudulent representations. * - . ,-
The word “obtain” means-just what it says, to get, to secure possession of. ■ It is used in the ordinary sense and has no technical meaning -beyond that.
The second alleged variance is predicated upon ■ the last three or four lines of the indictment, to-wit, “to be by him, the said Edward W. Tingue, invested in said woolen mill stock in the name of her., the said Alice M. Ohliger.” The prosecuting witness upon the stand testified that the money was paid to Tingue, not agreeable to this language of -the indictment but, upon the contrary, merely as a loan. ■Whereupon the defendant claims that this was ,a fatal variance, that the transactions are entirely different and that, therefore, the defendant should have been discharged at the close of the state’s evidence. What is a variance as known in criminal law and procedure?
Section 13582, General Code, reads.: “When,,on the trial of an indictment, there appears to be a variance between the statement in such indictment and the evidence offered in proof thereof, in the Christian name or surname, or both or other description of a person therein named or described or in the name or description of a matter or thing therein named or described, such variance shall not be ground for an acquittal of the defendant, unless *373 the court before which the trial is had, finds that such variance is material to the merits of the case or may be prejudicial to the defendant.”
The provisions of this section are clear and conclusive, both upon the court and the defendant. The previous section, 13581, General Code, also throws much light upon what are material or immaterial matters in an indictment:
• “Sec. 13581. An indictment shall not be invalid, and the trial, judgment or other proceeding stayed, arrested or affected by the omission of the words ‘with force and arms,’ or words of similar import, or the words ‘as appears by the record/ or for omitting to state the time at which the offense was committed, in a case in which time’ is not of the essence of the offense; or for stating the time imperfectly; or for want of a statement of the. value or price of a matter or thing or the amount of damages or injury, where the value or price or the amount of damages or injury is not of the essence of the offense; or for the want of an allegation of the time or place of a material fact, when the time and place have once been stated therein; or that dates and numbers are represented by figures; or for an omission to allege that the grand jurors were impaneled, sworn or charged; or for surplusage or repugnant allegation when there is sufficient matter alleged to indicate the crime and person charged; or for want of averment of matter not necessary to be proved; or for other defects or imperfections which do not tend to prejudice the substantial rights of the defendant upon the merits.”
*374 Under the proof the, trial judge held that the variance claimed was not material to the merits of the case and not prejudicial to the defendant. What is meant by the language, “not material to the merits of the case ?” Clearly it must relate to matters that need to be pleaded and proved by the state. That is, it relates to the elements of the offense. Mere matter of unnecessary particularity or description, being wholly unnecessary and immaterial, should not.affect the “merits of the case,” and cannot, therefore, be prejudicial to the defendant.
If the defendant Tingue obtained the money by false pretenses,. what possible interest could the state have, or anybody else, for any pleading or proving what he did with the money, because the crime had already been committed? Even had he returned the money to Mrs. Ohliger, the prosecuting witness, it would not wipe,out the crime any more than the thief by returning the money could wipe out. the theft. The variance relates to a matter of immaterial form rather than a material fact and could, therefore, in no way “prejudice the substantial rights of the defendant upon the merits.”
The court was right in overruling the motion of the defendant based upon the claimed variance between pleading and proof.
One other error is claimed by reason of which the judgment of the court below should be reversed. It is claimed by the defendant, and he has made an affidavit to that effect, that during the trial, while the arguments of counsel were being made, the trial judge was absent from the court room, and that, *375 therefore, under the .< authority of Miller v. State, 73 Ohio St., 195; there was- a virtual dissolution of the court and--a mistrial, for which the defendant was in no way responsible* and that, therefore,, he should go acquit. • We are entirely content with the doctrine laid down in the Miller case* supra, but it will be noted that the third paragraph of ■ the. syllabus reads as follows: ,
“Where it is shown that a judge during a trial of one accused -of murder is so. far absent, and for such length of time, as to prevent-his control .of the conduct of the trial while the prosecuting attorney is making the last argument- to. the- jury, and during such absence that officer,, in the hearing of the jury, comments upon matters not in evidence and extraneous to the case, which are calculated to work serious prejudice to the defendant, and accuses the defendant’s counsel of conduct apart from the proceedings of the trial of a highly unprofessional or criminal character, such prejudice will be presumed as to require a reversal of the judgment.”
The whole doctrine is predicated upon the misconduct of counsel to the prejudice of the defendant during such absence.
The chief purpose of the presence of the judge while the arguments of counsel are being made to the jury is-to see to it that the procedure is regular, that the ethics of counsel shall be duly observed, that no unfair or unjust advantage shall be táken by one side as against the other and that, if objection be made to- misconduct of any counsel, there shall be a, judge present to entertain it and to'properly rule upon it.
*376 Now, it is not claimed in this case that there was any misconduct of counsel during the argument nor anything else irregular or erroneous, except the mere temporary absence of the trial judge during a part of the argument and while said trial judge was preparing his charge to the jury. It does not appear from the record that there was any objection to such absence, nor that it resulted prejudicially in anywise to the defendant.
. Other errors are complained of, but we do not deem them of sufficient importance to discuss them in detail.
We find no error in the record and the judgment below is, therefore, affirmed.

Judgment affirmed.

Nichols, C. J., Johnson, Donahue and Newman, JJ., concur. Wilkin, J., not participating.